**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*,[1] | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |

---

| | |
|---|---|
| LUC A. DESPINS, CHAPTER 11 TRUSTEE, | Adv. Proceeding Nos. 24-5238, 25-5048, 24-5036, 24-5040, 24-5027, 24-5274, 24-5001 |
| Plaintiff, | |
| v. | |
| QIANG GUO, MEI GUO, HING CHI NGOK, YANPING "YVETTE" WANG, KIN MING JE AKA WILLIAM JE, and DEFENG CAO | |
| Defendants. | |

---

**SUPPLEMENTAL MOTION OF CHAPTER 11 TRUSTEE**
**TO EXTEND AUGUST 15, 2025 DEADLINE FOR TRUSTEE TO**
**ASSERT AVOIDANCE CLAIMS AGAINST CERTAIN DEFENDANTS**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor"), and plaintiff in the above-captioned adversary proceedings (collectively, the "Avoidance Actions"), by and through

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

his undersigned counsel, hereby files this motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order in the above-captioned adversary proceedings (collectively, the "Avoidance Actions"), substantially in the form of the proposed order attached as **Exhibit 1** hereto (the "Proposed Order"), further extending the Ordered Extension (as defined below) for the Trustee to assert avoidance claims against the following defendants: (1) Qiang Guo; (2) Mei Guo; (3) Hing Chi Ngok; (4) Defeng Cao; (5) Yvette Wang; and (6) William Je (collectively, the "Defendants"). In support of the Motion, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. In February 2024, the Court granted the Trustee's first motion to extend the limitations periods for the Trustee to file avoidance actions. In August 2024, the Court granted the Trustee's second motion seeking such relief, extending the limitations period through and including February 15, 2025.

2. In January 2025, the Trustee filed a third motion seeking an extension of the limitations periods, stating that it would be the Trustee's last request for a blanket extension of time to file avoidance claims.[2] In February 2025, the Court granted the Trustee's third motion, extending the limitations period through and including August 15, 2025.

3. By this Motion, the Trustee requests that the Court extend the limitations periods through and including February 15, 2026 *only* as to the below Defendants:

- Qiang Guo
- Mei Guo
- Hing Chi Ngok

---

[2] Second Supplemental Motion of Chapter 11 Trustee to Extend February 15, 2025 Deadline for Trustee to File Avoidance Actions, ¶ 1.

2

- Defeng Cao
- Yvette Wang
- William Je

4. All of the Defendants are or were the Debtor's family members or close associates and all played key roles in the Debtor's fraudulent shell game. They include the Debtor's wife and adult children, who have served as nominal owners of the Debtor's shell companies and other valuable assets, and the Debtor's general counsel. They further include the Debtor's indicted criminal co-conspirators, one of whom was recently sentenced to 10 years in prison for her role in the Debtor's fraud, and the other of whom remains a fugitive from justice. Several of the Defendants have also actively obstructed the Trustee's investigation by failing to comply with discovery orders or offering false or misleading testimony in connection with the Chapter 11 Case.

5. The Trustee regularly learns new information that further reveals the scope of the Defendants' involvement in the Debtor's fraudulent shell game. For example, as discussed herein, Mei Guo has coordinated hundreds of thousands of dollars of overseas transfers to fund $30,000 monthly rental payments for a second mansion in Greenwich, Connecticut, despite testifying to the Court that she did not recall the source of the rental payments. There is simply no way for the Trustee to know with any certainty the full range of transfers that the Defendants may have received or that may have benefited the Defendants.

6. Accordingly, the Court should further extend the Trustee's time to file avoidance claims or to amend his operative complaints against the Defendants. The Trustee makes this request in an abundance of caution, recognizing that any amendments of his avoidance complaints would likely relate back to his original complaints against the Defendants, all of which were filed on or before February 15, 2024, and that the Trustee would also likely be entitled to the benefit of equitable tolling.

7. The Trustee believes these limited, further extensions are appropriate under the Court's most recent extension order in that they are filed only in pending Adversary Proceedings against specific individuals directly involved with the Debtor and his shell game, and thus the Trustee requests that the Court approve them now. However, if the Court believes it would be more appropriate to address any time limitations to these Defendants at a later stage of these Adversary Proceedings, or in subsequently filed proceedings, the Trustee is prepared to do so.

## BACKGROUND

8. On February 15, 2022, the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9. On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Debtor's Chapter 11 Case.

10. On June 15, 2022, the Bankruptcy Court entered a memorandum of decision and order [Docket No. 465] directing the United States Trustee to appoint a chapter 11 trustee. On July 8, 2022, the Bankruptcy Court entered an order [Docket No. 523] appointing the Trustee.

   a. **Original Extension Motion and Original Extension Order**

11. The Debtor's bankruptcy schedules, filed in March 2022, claimed only $3,850 in assets compared to hundreds of millions of dollars of liabilities.[3] The Debtor asserted in the Bankruptcy Court that he was essentially penniless and that his luxurious homes, the Lady May yacht, and his other publicly flaunted trappings of wealth did not belong to him, but to companies purportedly owned by his family members.[4] As several courts have now observed, the Debtor was able to maintain his opulent lifestyle while professing to own virtually no assets by constructing a

---

[3] *See* Schedules of Assets & Liabilities, at 1 [Docket No. 78].
[4] *See Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions* [Docket No. 107].

4

vast maze of shell companies in which he hid his wealth in the names of family members and close associates.

12.    Since his appointment, the Trustee has been working diligently to identify and recover for the benefit of the estate the assets the Debtor has hidden and/or transferred. To that end, in accordance with the Court's directive, the Trustee has launched a complex and thorough investigation and litigation process, focusing on the Debtor's "shell game"—*i.e.*, his use of alter ego companies to hide his assets from creditors. Broadly speaking, the process has included (a) discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (b) litigation to establish that certain entities are alter egos of the Debtor and/or recover specific property and assets.

13.    Locating and recovering the Debtor's assets has required the Trustee to retain attorneys in multiple jurisdictions, as well as other professionals, such as Kroll, LLC ("Kroll"), a forensic accounting firm with international reach. Unraveling the Debtor's maze of shell companies and tens of thousands of transactions (on its own, a hugely complex task) was further complicated and delayed by the efforts of the Debtor, his family members, and his associates to obstruct the Trustee's efforts at every turn.

14.    Accordingly, on January 18, 2024, the Trustee filed a motion to extend or toll certain statutes of limitations that would have expired on February 15, 2024 (the "Original Extension Motion").[5] The Original Extension Motion contained (and this Motion incorporates by reference) a detailed description of the Trustee's efforts and successes to that date, as well as the various obstruction efforts with which the Trustee had been forced to contend.

---

[5] See Docket No. 2509, *Motion for Entry of Order Extending Deadline for Trustee to File Avoidance Actions Under Bankruptcy Code Sections 108, 546(a), and 549*.

5

15. On February 15, 2024, the Court issued an opinion and order granting the Original Extension Motion [Docket No. 2921] under Bankruptcy Rule 9006(b) (the "Original Extension Order"). The Court extended the Trustee's time to commence avoidance actions through August 15, 2024, and provided that such date is subject to further extension.

### b. Second Extension Motion and Second Extension Order

16. On July 19, 2024, the Trustee filed the *First Supplemental Motion to Extend August 15, 2024 Deadline for Trustee to File Avoidance Actions* [Docket No. 3329] (the "Second Extension Motion"). The Second Extension Motion is incorporated herein by reference, including the Second Extension Motion's discussion of the Trustee's further efforts and developments in the Chapter 11 Case.

17. Certain entities objected to the Second Extension Motion and the Court held an evidentiary hearing on August 13, 2024. The Trustee testified and was subject to cross-examination at the evidentiary hearing. Following the hearing, on August 14, 2024, the Court entered an order (the "Second Extension Order") [Docket No. 3417] further extending through February 15, 2025 the time for the Trustee to commence avoidance actions and other actions on behalf of the estate and for amending pending complaints, and providing that such date is subject to further extension.

### c. Third Extension Motion and Third Extension Order

18. On January 24, 2025, the Trustee filed the *Second Supplemental Motion of Chapter 11 Trustee to Extend February 15, 2025 Deadline for Trustee to File Avoidance Actions* (the "Third Extension Motion" and, jointly with the Second Extension Motion and the Original Extension Motion, the "Extension Motions") [Docket No. 4004]. The Third Extension Motion is

6

incorporated herein by reference, including the Third Extension Motion's discussion of the Trustee's further efforts and developments in the Chapter 11 Case.

19. Certain entities objected to the Third Extension Motion and the Court held an evidentiary hearing on February 11, 2025. The Trustee testified and was subject to cross-examination at the evidentiary hearing. Following the hearing, on February 14, 2025, the Court entered an order (the "Third Extension Order") [Docket No. 4106] further extending through August 15, 2025 (the "Ordered Extension") the time for the Trustee to commence avoidance actions and other actions on behalf of the estate and for amending pending complaints.

20. In its Third Extension Order, the Court ordered that any additional requests for extension of the statute of limitations set forth in 11 U.S.C. §§ 108, 546, and 549 must be made by motion and filed in the specific pending or subsequently commenced avoidance action.

### d. Developments Since Third Extension Order

21. Since the Third Extension Order, the Trustee has continued to diligently pursue discovery and unravel the Debtor's fraudulent shell game, as well as prosecute more than 300 pending avoidance actions and other adversary proceedings to establish that the Debtor's shell companies were his alter egos.

### e. Defendants' Involvement in the Debtor's Fraudulent Schemes

22. As noted above, Defendants Hing Chi Ngok, Mei Guo, and Qiang Guo are the Debtor's immediate family members, and Defeng Cao is Mei Guo's longtime boyfriend and the Debtor's de facto son-in-law. All of these Defendants assisted the Debtor in laundering and concealing his assets to hinder, delay, or defraud creditors. Such conduct includes, among other things, acting as nominal owners and/or purported officers or directors of shell companies that were the Debtor's alter egos and/or that the Debtor equitably or beneficially owned. Among many

7

other examples, Mei Guo nominally owned shell companies—which were found to be alter egos of, or beneficially owned by, the Debtor—that owned the Debtor's superyacht and private jet.[6] Qiang Guo nominally owned, among others, Golden Spring New York Ltd. ("Golden Spring"), Lamp Capital LLC ("Lamp Capital"), and K Legacy Limited ("K Legacy"), which the Court found to be the Debtor's alter egos and/or beneficially owned by the Debtor.[7] Qiang Guo also sought to assert an interest in the Debtor's Sherry Netherland residence through a sham trust agreement—a claim he has since abandoned Hing Chi Ngok nominally owned Greenwich Land LLC ("Greenwich Land"), another of the Debtor's alter egos, which held title to the Debtor's Greenwich mansion, despite testifying that she knew effectively nothing about the entity's finances.[8] Defeng Cao, among other things, served as the nominal owner of a number of Kwok's motor vehicles, including four luxury motorcycles that Mr. Cao admitted never having ridden.[9]

23.     William Je and Yvette Wang are close associates of the Debtor who similarly assisted the Debtor in laundering and concealing his assets to hinder, delay, or defraud creditors. Their efforts included, among other things: (1) acting as purported nominal owners, officers,

---

[6] *Memorandum of Decision and Order Granting Motion for Partial Summary Judgment on Second Counterclaim* [Adv. Proc. No. 22-05003, Docket No. 221] (finding HK USA is and was at all relevant times alter ego of Debtor and all property of HK USA including the Lady May constituted and constitute property of estate) (the "HK USA Decision"); *Memorandum of Decision and Order Granting in Part Motion for Summary Judgment* [Adv. Proc. No. 23-05008, Docket No. 126] (finding Debtor is beneficial owner of Whitecroft, Bombardier was property of estate, and Bombardier proceeds are property of estate) (the "Bombardier Decision"). The Court also recently found that Hudson Diamond NY LLC and Leading Shine NY Ltd.—two entities purportedly owned by Mei Guo—are also alter egos of the Debtor. *See Memorandum of Decision and Order Granting Motion for Summary Judgment* [Adv. Proc No. 23-05023, Docket No. 136].

[7] *Order Granting Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Entry of Default Judgment Against Golden Spring (New York) Ltd and China Golden Spring Group (Hong Kong) Limited* [Adv. Proc. No. 23-05018, Docket No. 35] (the "Golden Spring Decision"); *Default Judgment in Favor of Chapter 11 Trustee for Estate of Ho Wan Kwok on First and Second Claims of His Complaint Against Lamp Capital LLC and Infinity Treasury Management Inc.* [Adv. Proc. No. 23-05023, Docket No. 66] (the "Lamp Capital Decision"); and *Order Granting Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Entry of Default Judgment Against K Legacy Ltd. and Qiang Guo* [Adv. Proc. No. 24-05249, Docket No. 76].

[8] *See e.g.*, *Memorandum of Decision and Order Granting Motion for Summary Judgment* ¶¶ 90-92 [Adv. Proc. No. 23-05005, Docket No. 133] (the "Greenwich Land Decision").

[9] This Court has found that these four motorcycles purportedly held under Defeng Cao's name are property of the estate. *See Memorandum of Decision Granting Motion for Judgment on the Pleadings* [Adv. Proc. No. 24-05001, Docket No. 33].

directors, or other representatives of entities that were the Debtor's alter egos and/or that he equitably or beneficially owned,[10] and (2) regularly transferring funds between various of the Debtor's shell companies to launder those funds for the Debtor's benefit, disguising these money movements as "loans," "dividends," or "investments." Both William Je and Yvette Wang were criminally charged with criminal racketeering and fraud in connection with the Defendant's schemes.[11]

f. **Defendants' Obstruction Efforts and Other Challenges**

24. The Defendants have persistently failed to produce documents and information responsive to the Trustee's discovery requests and/or have provided false or misleading information. By way of example, various of the Defendants have: (1) falsely asserted that certain of the Debtor's alter ego entities had no or limited assets;[12] (2) falsely claimed that they did not have access to proceeds from the sale of the Debtor's assets;[13] (3) claimed to be the sole member of a Debtor-controlled entity while also claiming a lack of any knowledge or information about its business affairs;[14] (4) proposed or provided false testimony about the Debtor's financial relationship with his family members;[15] and (5) directly or indirectly been held in contempt by this Court for failing to comply with Rule 2004 subpoenas.[16]

---

[10] Yvette Wang served as an officer and authorized signatory of Golden Spring, Greenwich Land, and other shell companies that were the Debtor's alter-egos and/or that the Debtor equitably or beneficially owned.

[11] William Je was ultimately indicted as a co-conspirator in the Debtor's schemes, and is currently a fugitive from justice. Yvette Wang pled guilty to one count of conspiracy to commit wire fraud and one count of conspiracy to commit money laundering, and was ultimately sentenced to 10 years imprisonment.

[12] Bombardier Decision ¶¶ 58.

[13] Bombardier Decision ¶¶ 44, 46.

[14] *See, e.g., Greenwich Land Decision,* at 41-43, 59.

[15] As described in detail by the United States Government, Yvette Wang coached Mei Guo on claiming falsely to attorneys that the Debtor's yacht belonged to Mei Guo, a claim which Mei Guo later repeated under oath in the Chapter 11 Case. *See e.g.*, Notice of Chapter 11 Trustee Regarding Update with Respect to Debtor's Criminal Proceedings Pending in United States District Court for Southern District of New York [Main Case Docket No. 3067].

[16] *See e.g., Order Holding HK Parties in Contempt of Court and Sanctioning HK Parties, Attorney Vartan and Chiesa Shahinian & Giantomasi PC* [Main Case Docket No. 1537]; *Order Granting in Part Motion for Entry of Order Holding Hudson Diamond NY LLC in Civil Contempt of Court* [Main Case Docket No. 2009].

25.     Even in the last few months, the Trustee has obtained additional documents and information reflecting that Mei Guo's recent sworn testimony was false or, at best, intentionally evasive.  For example, when questioned in March 2025 as to who was paying her mother's (Hing Chi Ngok's) $30,000 monthly rent, Mei Guo testified (both in a deposition and before the Court) that she could not remember.  However, documents recently obtained by the Trustee through Bankruptcy Rule 2004 discovery show Ms. Guo was emailing with her mother's landlord about the account funding rental payments as recently as the day before the hearing, and further that Mei Guo was intimately involved in coordinating overseas transfers to fund hundreds of thousands of dollars in rental payments.  Mei Guo repeatedly advised in emails to, among others, the escrow agent holding rental payment funding that she was communicating directly with the sources of funds overseas.  At one point (in seeking to validate a wire transfer) Mei Guo even provided the birthdate of an overseas individual wiring funds.  Based on the foregoing, it is simply implausible that Mei Guo lacked knowledge as to who was paying hundreds of thousands of dollars to rent another Greenwich mansion.

## RELIEF SOUGHT

26.     The Trustee requests entry of the Proposed Order extending the Ordered Extension with respect to the Defendants for an additional six months, through and including February 15, 2026.

## BASIS FOR RELIEF

27.     In the Original Extension Order, the Court held that, as a matter of law, Bankruptcy Rule 9006(b) authorizes a bankruptcy court to extend the statutes of limitations found in sections 108(a), 546(a), and 549(d) of the Bankruptcy Code.  The question, therefore, "is whether there is

'cause,' on the facts and circumstances before the Court," to do so.[17] The Court found cause in connection with the earlier extension motions filed by the Trustee, and the Trustee submits there is cause to grant the instant Motion.

## I. Cause Exists Under Rule 9006(b) to Grant Trustee's Requested Extension

28. In the Second and Third Extension Orders, the Court found cause from, among other things, the combination of (i) the Debtor and his associates' ongoing contempt and his failure to perform statutory duties, (ii) the complexity and extent of the Debtor's financial affairs, and (iii) the Trustee's diligence in his investigation. These factors continue to apply and support granting this Motion.

### a. Trustee Has Acted Diligently

29. A bankruptcy trustee acts diligently if any delay is not self-inflicted. *Schmidt v. Twosons Corp. (In re Black Elk Energy Offshore operations, LLC)*, No. 15-34287, 2022 WL 158990, at *11 (Bankr. S.D. Tex. May 19, 2022) (granting extension where need "derives from some external obstacle to timely filing beyond the [party's] control, not from self-inflicted delay") (internal quotation marks and references omitted)[18]; *see also In re Fundamental Long Term Care, Inc.*, 501 B.R. 784, 790-91 (Bankr. M.D. Fla. 2013) ("It is enough to say that the targets cannot credibly claim the Trustee's inability to complete her investigation is a result of any lack of diligence on her part"). Here, the Trustee's investigation and asset recovery into the Defendants have been delayed by events outside of his control, including the sheer volume of information the Trustee is required to obtain and analyze, combined with the total lack of any books and records from the Debtor.

---

[17] Original Extension Order at 12.
[18] While *Black Elk* dealt with equitable tolling, not extensions under Rule 9006(b), this Court has already noted there is overlap between the factual predicates that justify the application of the two doctrines. *See* Extension Order at 13.

30. As set forth in the Trustee's prior Extension Motions, what the Trustee learns from his investigation is rarely, if ever, a standalone piece of information. Instead, each fact that the investigation uncovers is just one piece in the puzzle, with each piece leading to another potential hidden asset or transfer that requires further investigation. *See Frietz v. Stites & Harbison (In re ThermoView Indus., Inc.)*, 381 B.R. 225, 227 (Bankr. W.D. Ky. 2008) (granting extension motion under Rule 9006(b) in an "exceedingly complex case in which the Trustee has pursued and filed nearly 400 adversary proceedings"); *see also In re Fundamental Long Term Care*, 501 B.R. at 790 ("The Court notes—as it has done many times in the past—that this case is unique. That is true not only of the facts of this case, but the legal issues as well. And the stakes are unquestionably high. There is over $1 billion in claims in this case, and the Trustee may be seeking to recover that much from the targets.").

### b. **Complexity and Extent of Debtor's Financial Affairs**

31. The Court is well aware of the complex and far-reaching nature of Debtor's fraudulent scheme, which has been set forth in detail in the Trustee's prior Extension Motions. The Debtor's complex web spread across the globe, involving hundreds of entities and associates and billions of dollars in real and personal property throughout the United States, and, indeed, the world.

32. In the Debtor's criminal proceedings, the U.S. Government provided evidence of a billion-dollar fraud and money laundering scheme, masterminded by the Debtor and relying upon family members and other trusted associates, including the Defendants. Through this fraud, the Debtor raised money from his online followers through purported investment and other schemes, then laundered the funds through a vast network of shell companies and bank accounts, using the funds for his personal benefit and to continue the fraudulent scheme.

33. The Debtor—with the help of the Defendants—used this vast network to conceal the Debtor's assets from the estate's creditors and disguise the true source of the funds.

### c. Defendants' Obstruction and Lack of Cooperation

34. Courts find cause to extend limitations periods when a trustee is unable to make progress on discovery, especially in light of the debtor and his associates' obstruction. *See, e.g., In re Int'l Admin. Servs. Inc.*, 408 F.3d 689, 702 (11th Cir. 2005) (tolling statute of limitations based, in part, on debtor and defendant's attempts to interfere with trustee's investigation into asset diversion plan by hiding their activities and violating discovery requests).[19]

35. In *In re Teras Breakbulk Ocean Navigation Enters., LLC*, a district court in the Southern District of Florida affirmed a bankruptcy court ruling extending deadlines under sections 108, 546, and 549 of the Bankruptcy Code upon the request of a bankruptcy trustee in light of fraudulent conduct by the debtors' principal. *See In re Teras*, 658 B.R. 611, 621 (S.D. Fla. 2024) (endorsing *In re Fundamental Long Term Care, Inc.*, 501 B.R. at 792)). In determining that the extension was a proper exercise of the bankruptcy court's authority under Bankruptcy Rule 9006, the district court noted facts similar to those present in this Chapter 11 Case, including that the debtors' principal had "engaged in fraudulent concealment, impacting the timing in which [avoidance] claims could be brought," including by "setting up numerous entities all over the world so that they cannot be traced back to him" and engaging in transfers of assets. *Id.* at 621.

---

[19] *See also Bender v. Mann (In re Bender)*, No. 02-00773-RTB, 2010 WL 6467681, at *9-10 (B.A.P. 9th Cir. Nov. 15, 2010), *aff'd*, 480 F. App'x 445 (9th Cir. 2012) (affirming lower court decision for equitable tolling where debtor's obstruction "stood in the way" of the trustee's filing of avoidance action and noting the "case law is replete with examples where courts have allowed equitable tolling in response to obstructive behavior by a party"); *Freeland v. CPA Warehouse (In re Livermercial Aviation Holding, LLC)*, 508 B.R. 58, 71 (Bankr. N.D. Ind. 2014) ("The Trustee's inability, despite due diligence, to obtain information/documentation highly material to the core of this case . . . amply supports the application of the doctrine of equitable tolling [] to extend the limitation period of 11 U.S.C. § 546(a)(1)(A)").

36. Despite the passage of time and entry of the criminal verdict, nothing has changed. The Debtor and his family members and associates—including the Defendants—have continued to refuse to cooperate in any way with the Trustee. As has been the case since his appointment, the Trustee has had to utilize discovery practice to obtain the information he needs to conduct his investigation. Even without active obstruction, therefore, the Debtor's lack of cooperation has delayed the Trustee's investigation and constitutes cause under Rule 9006(b) to grant the instant Motion.

37. To be clear, however, active obstruction, as detailed *supra* and in the Trustee's prior Extension Motions, has and continues to take place. The Debtor, through, among others, the Defendants, **continues to this day** to actively obstruct and delay the Trustee's efforts. None of the Defendants has provided reliable, fulsome document production or information during the Trustee's Bankruptcy Rule 2004 investigation. Several of the Defendants continue to (falsely) assert that they are the legitimate owners of the Debtor's entities or property. In light of the Defendants' conduct, there is simply no way to reliably know for certain the full scope of avoidance claims that the Trustee may be entitled to assert against the Defendants.

## II. Trustee Reserves Rights Under Equitable Tolling and Other Equitable Doctrines

38. The Trustee files this Motion in abundance of caution, recognizing that any amendments of existing avoidance complaints against the Defendants to specify additional transfers would likely relate back to the Trustee's original complaints. The Trustee further reserves all rights to raise equitable tolling or other equitable arguments in response to a defense that any claims asserted against the Defendants are time-barred.

*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]*

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court enter the Proposed Order in these Avoidance Actions granting the relief requested herein and grant any other relief as the Court considers proper.

Dated: July 30. 2025  
       New Haven, Connecticut

LUC A. DESPINS,  
CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*  
    Patrick R. Linsey (ct29437)  
    NEUBERT, PEPE & MONTEITH, P.C.  
    195 Church Street, 13th Floor  
    New Haven, Connecticut 06510  
    (203) 781-2847  
    plinsey@npmlaw.com

       *and*

    Nicholas A. Bassett (admitted *pro hac vice*)  
    PAUL HASTINGS LLP  
    2050 M Street NW  
    Washington, D.C., 20036  
    (202) 551-1902  
    nicholasbassett@paulhastings.com

       *and*

    Douglass Barron (admitted *pro hac vice*)  
    PAUL HASTINGS LLP  
    200 Park Avenue  
    New York, New York 10166  
    (212) 318-6079  
    douglassbarron@paulhastings.com

    *Counsel for the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

------------------------------------------------------------x
:
In re: : Chapter 11
:
HO WAN KWOK, *et al.*,[20] : Case No. 22-50073 (JAM)
:
Debtors. : (Jointly Administered)
:
------------------------------------------------------------x
:
LUC A. DESPINS, CHAPTER 11 : Adv. Proceeding Nos. 24-5238, 25-5048,
TRUSTEE, : 24-5036, 24-5040, 24-5027, 24-5274, 24-5001
:
:
Plaintiff, :
v. :
:
:
:
QIANG GUO, MEI GUO, HING CHI NGOK, :
YANPING "YVETTE" WANG, KIN MING JE :
AKA WILLIAM JE, and DEFENG CAO :
:
Defendants. :
:
------------------------------------------------------------x

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date hereof the foregoing motion, and all exhibits and attachments thereto was electronically filed. Notice of this filing will be sent by e-mail to all appearing parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

---

[20] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Dated: July 30, 2025  
New Haven, Connecticut

LUC A. DESPINS,  
CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*  
Patrick R. Linsey (ct29437)  
NEUBERT, PEPE & MONTEITH, P.C.  
195 Church Street, 13th Floor  
New Haven, Connecticut 06510  
(203) 781-2847  
plinsey@npmlaw.com

*Counsel for the Chapter 11 Trustee*

2

**Exhibit 1**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------------x
:
In re: : Chapter 11
:
HO WAN KWOK, *et al.*,[1] : Case No. 22-50073 (JAM)
:
Debtors. : (Jointly Administered)
:
---------------------------------------------------------------x
:
: Adv. Proceeding Nos. 24-5238, 25-5048,
LUC A. DESPINS, CHAPTER 11 : 24-5036, 24-5040, 24-5027, 24-5274, 24-5001
TRUSTEE, :
:
Plaintiff, :
v. :
:
:
:
QIANG GUO, MEI GUO, HING CHI NGOK, :
YANPING "YVETTE" WANG, KIN MING JE :
AKA WILLIAM JE, and DEFENG CAO :
:
Defendants. :
:
---------------------------------------------------------------x

**[PROPOSED] ORDER GRANTING SUPPLEMENTAL MOTION OF CHAPTER 11
TRUSTEE TO EXTEND AUGUST 15, 2025 DEADLINE FOR TRUSTEE TO
ASSERT AVOIDANCE CLAIMS AGAINST CERTAIN DEFENDANTS**

UPON CONSIDERATION OF the *Supplemental Motion of Chapter 11 Trustee to Extend August 15, 2025 Deadline for Trustee to Assert Avoidance Claims against Certain Defendants* (the "Motion") filed in the above-captioned adversary proceedings (the "Avoidance Actions"), and good cause having been shown, and the Court having considered any and all objections and other

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

responses to the Motion, and the Court finding that (i) there is good cause for the relief requested, (ii) the Trustee has acted diligently, and (iii) the Motion has been duly served on all appearing defendants in the Avoidance Actions, and such notice is proper and sufficient under the circumstances and no other notice is required, and the relief provided herein being narrowly tailored to serve the foregoing purposes, it is by the Court, hereby

ORDERED, that the Motion is granted as set forth herein; and it is further

ORDERED, that the time limitations set forth in 11 U.S.C. §§ 108, 546, and 549 for the Trustee to assert avoidance claims against the following defendants: (1) Qiang Guo; (2) Mei Guo; (3) Hing Chi Ngok; (4) Defeng Cao; (5) Yvette Wang; and (6) William Je (collectively, the "Defendants") on behalf of the estate, as well as for amending any pending complaints against them, are extended through and including February 15, 2026, which date may be further extended; and it is further

ORDERED, that any Defendant that has received notice, whether actual or constructive, of the Motion and did not object to the Motion has waived its right to assert a limitations period defense as to any avoidance claim(s) asserted under the terms of this Order; and it is further

ORDERED, that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED, that the Trustee is authorized to take all actions necessary to effectuate the relief granted herein; and it is further

ORDERED, that the Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order